118-0101, Frank Mioni v. F.E. Warren, 5 objection 8. Counsel, you may proceed. The Illinois Workers' Compensation Commission is the ultimate finder of fact. The Illinois National Commission is the ultimate judge of the credibility of the witnesses, including the petitioner. But the commission can't use impermissible character evidence to impugn the credibility of the petitioner. The commission can't require notice of an accident within 24 hours rather than the 45-day requirement of the act. And the commission can't simply make stuff up to say that the petitioner wasn't credible in his testimony. Well, the commission noted some ostensible, what they felt were ostensible, inconsistencies between his testimony and his medical records. And so are you saying they sort of bootstrapped this other incident that took place after the witnesses testified improperly to use that? No, what I'm saying is they bootstrapped this incident, which, you know, my client says didn't happen. But they bootstrapped it, and then they misconstrued it. And then they said, well, that doesn't make any sense. And specifically — And how did they misconstrue it? Well, what they said is, on page 10 of their decision, the petitioner basically claimed that the witness apologized for their testimony. And he told them not to worry because they were still human brothers. Petitioner's testimony about the occurrence is inherently inconsistent and simply does not make sense intuitively. And that's true. It doesn't make any sense intuitively. And it doesn't — it isn't consistent. But that's not what he said. Well, what about a base testimony? But when we go to the test point, Judge, I don't mean to interrupt you, but he said — I believe I said something, don't ever confuse us for being friends or human brothers. Now, that doesn't make sense. Yeah, but I don't think that's really — I don't want to see you go off on a tangent here because let's assume that they believed the two witnesses 100 percent. Sure. That doesn't mean that they were justified in even considering this evidence, does it? You're absolutely right. They were not justified in considering it. Because they had already testified, and then the commission makes a very curious acknowledgment in its ruling. Although the encounter is not explicitly relevant to the issues addressed here, then they go on to bring it in when they acknowledge it's not relevant to any issues and the witnesses had already testified. So what is it relevant to? I'm here to say it's the credibility of the claimant. Right, and that's what they said. It is clearly relevant regarding the determination of its overall credibility. Well, it's not. And it's not because the court has said that it's not. And the purpose of this testimony, the purpose of the respondent bringing in this testimony, and it was done for the purposes of an offer of proof. And essentially what the argument is, is that somehow my client, after these individuals testified, that he somehow intimidated them or he threatened them. Well, they had already testified, though. They had already testified, so it doesn't make any sense. If this happened before they testified, that might be a different story. I don't disagree with you. And it also doesn't make any sense because these are his bosses, and so how he can threaten them with the threat to their job security when he's not in charge of them doesn't make any sense. But the commission relied on this. It wasn't a hiring haul anyway, was it? Pardon me? It wasn't a hiring haul anyway, was it? It was not a hiring haul. There was nothing to do with it. But the purpose of it was to say, my guy's a bad guy. My guy is a bad guy. And so therefore, he doesn't get to claim an injury under the Roads Compact. He can't recover because he's a bad guy. And that's not appropriate. And it went on to just simply make things up. It says, also of interest is Dr. Dragasick's treatment notice, September 23, 2013. In that note, he noted that the petitioner reported it was the first time he had raised his arm over his head for three years. The notation certainly suggests the petitioner had significant problems with the shoulder project with Dr. Dragasick. It didn't happen. He didn't see the doctor until January 29. That's clear. That citation that this is made up, it's not accurate. It's not true. And we see this throughout the commission's decision. And so we have this character evidence that isn't admissible, that they relied on, and they said is clearly relevant to the issues. It's clearly relevant in regard to the termination of his predatory. Then they have this 24-hour, and you didn't notify the employer within 24 hours of the incident. And this court has already rejected that. And it's already rejected it in the Oliver case and said that that's not relevant to the issues that we have before the commission. The issues that we have before the commission are whether or not you notified within 40 or the petitioner notified his employer within 45 days. Here, the respondent agrees that he was notified within 45 days. The application was filed on February 25th within 45 days of the accident. Despite that, the respondent still disputed notice. Yeah, well, let's not conflate. You might be conflating the issue of whether an accident occurred with the issue notice of causation, okay? I mean, I don't think that that's what they're arguing. There was no sufficient notice. I think they're arguing the commission found there was a question as to whether an accident occurred that was work-related, period. No, what they said was they went to his credibility. Well, right, credibility. They found that they didn't believe there was an accident. They found that there was no accident based on his credibility. Right. And one of those reasons was the delay that they cited. Now, whether or not it's sufficient to carry the day is our decision, but I can see their logical connection on that point. But let me ask you a point of question. If you were to win on the manifest weight, then obviously the issue of prejudicial impeachment is irrelevant, right? If I was to win on cause – win on manifest weight, their error in considering the improper impeachment is irrelevant. It's harmless error, isn't it? It's not relevant. It's not relevant if I win. That's right. But the fact of the matter is that's what they were basing the reversal of the arbitrator's decision. So what remedy – if we were ruling in your favor, what's the remedy? The remedy is to reinstate the arbitrator's decision. Why? The commission never ruled on what the arbitrator awarded. They reversed the arbitrator. They reversed him based on credibility. Right. And said no accident. But they never ruled on what he was entitled to. Right. If he was entitled to. I don't agree. So if we buy your argument that they considered improper evidence in making their credibility determination, wouldn't we tell it – send it back and tell them to do it over and don't consider that evidence? Right. You could or you couldn't reinstate the arbitrator's decision. How can we when the commission never ruled on the relief that the arbitrator granted? What did the arbitrator award your client? He awarded TTD and medical benefits. Did the commission ever address TTD or medical benefits? They did not. They did not. So they have never made a determination as to whether the award was proper if he was entitled to benefits. They knocked them on credibility. They've got to rule on it. The third thing I did want to point out, the commission came in and the commission said that – and they did it based on the credibility issues. But what we were looking at, what ultimately was the testimony, whether or not this is relevant or not, I think that's what you were asking. Respondent had it examined by their own Section 12 examiner, Dr. Hennessey. Dr. Hennessey said that he believed that it was an acute injury, it was a degenerative injury, and that degenerative injury was the need for the surgery. He also said that that degenerative condition was related to his work activities with Respondent. Petitioner's doctor also said that the work activities caused the need for the surgery. So whether or not – whether or not this issue about the credibility of the witness is appropriate or not, ultimately both sides agreed that his work activities were the cause of the need for the shoulder surgery and the rotator cuff. But again, even if that was true, it doesn't mean that it doesn't – it doesn't in and of itself determine whether an accident happened in the first place. Again, with all due respect, you're conflating the two issues. I'm not trying to. You may not try, but they are separate issues. I mean, they can see that maybe somebody was injured, but maybe it wasn't a work injury that caused his condition. I'm not saying that that's going to be the ultimate finding, but I think they are two separate issues. I don't disagree with you, but in the general sense, I don't think that the Respondent has a good faith basis for the denial of this claim from the beginning. Well, I think that they thought there was a delay in mentioning it. Sure, but their doctor says it's related to his work activities. The petitioner's doctor says it's related to his work activities. Therefore, I don't think they have a good faith basis for saying it. But what I would ask to do is that you vacate the Commission's decision. And remand it. That's your request. Okay. Thank you, Counsel. You'll have time in reply. Thank you. Counsel, you may respond. Your Honor, it's Counsel. I'm Mark Zeller. I'm going to have you remand in this case. I can see notice in this case. I mean, he clearly gave notice. He filed the application within the time. With regard to the reporting requirements at work, I'm not suggesting what Counsel is suggesting, that we're putting some new sort of requirement on the Commission that he has to follow all the rules at work. But whether he reported at work, that is an important issue as to credibility. It cooperates the lack of a history in the initial medical. And then he never told anybody about his accident. All right. So as I said, they're two separate issues. As a matter of fact, if you may agree somebody was injured, does it mean you agree a gap in his work? Yes. Okay. I think we understand that. Yeah. And, I mean, it's relevant in the terms that he knew he had to fill out a job accident report, and he never did it. He was a foreman. He knew that. He claims he called Scott. Well, before I get into that, I just want to say, if you assume that they admitted improper evidence of the fact that the claimant went out and threatened my witnesses, basically to go after them, there's still enough in the record here to show that the claimant lacks credibility. All right. Well, you're at risk now of conflating those two issues. Now, we're not confusing. The argument very succinctly is that the commission erred in considering that evidence, relying on an incident that occurred after Ackford and Smith were done testifying, that the commission itself explicitly acknowledged it had no relevance to the issues that they were dealing with. Well, how do you explain this then? It says, although the encounter is not explicitly relevant to the issues addressed here, the commission didn't base their decision on that. They based their decision on that. Then why are they considering it if it's not relevant? Well, because I brought it up, and it's part of the record. Do we want petitions being able to come in and basically threaten blacklist other witnesses? Is that the kind of decorum you wanted the commission to have? I don't think you want that to happen, no, before. What if he threatened them a week after the hearing? According to you, you'd want to reopen the proofs because he threatened the witnesses. What is threatening them after they testify have anything to do with their testimony? I'm saying take that out. I agree, take it out. There's still enough issues. But you can't. What about the argument that it prejudiced the hearing when the commission, in considering it, committed an error by doing that? You can't separate it. I mean, they mentioned it in their brief, but they said it's not explicitly relevant to the issues. The commission based its decision explicitly on this incident. How can you take it out? They didn't base their decision primarily on this incident. But they said the credibility was an issue here. Because of this incident, it adversely affects his credibility. But they said that's one factor. They talked about the medical records. They talked about his lack of, the fact that he didn't file his procedure. They talked about causation. And that goes to manifest weight. That goes more to manifest weight. The issue is, was he prejudiced by the introduction and consideration of this evidence? That is the issue on this point, part of it. Was he prejudiced, improperly affected and prejudiced by the consideration of this irrelevant testimony? The issues you're talking about go to causation, go to manifest weight. Well, he made his own bet on it. I mean, is that the kind of hearing you want to have where somebody can go on? Would the commission want to be aware of that? I mean, they did that? Sure. If they did it prior to the hearing, it would have more significance. But all I'm saying is they said they didn't explicitly make the decision. Okay. Really bad language there. Explicitly. How about implicitly? Or how about just saying not relevant and was not considered? I mean, I don't know. The language itself is a big door that's open somehow. Unfortunately, to support what you're saying, I mean, I don't know how you read explicitly relevant. I mean, I understand why you want us to say, well, you know, they absolutely didn't consider it. No, they said it wasn't explicitly. They didn't say what you got. I'm saying they did reference it as a factor for credibility. And there's a lot of factors for credibility in this case. I mean, there's a lot of factors for credibility. If it wasn't the issue, then error has been introduced, and then it's the question of whether or not it's harmless or not. Right. It may go down and come back, and you may have the same essential ruling with regard to credibility, but fleshing out the other factors is the majority factors in not addressing this issue. How is that threatening a witness? You know, you really want to do a harmless error analysis here, I would suggest, and I think that's what Justice Kavanaugh is suggesting. I agree. I agree that there is enough. They could come up with the same decision based on the rest of the evidence. Besides that, I completely agree. So if you agree, the question becomes, in light of this error, if you're conceding that, and certainly with the court suggesting, how is it harmless? How is it not something that was prejudicial to the other party? Well, I just think there's enough in the record of other credibility issues to support the decision of the circuit court, to support the decision of the jury. And what would that be? Well, let me start off by the fact that let's talk about Dr. Bracevich, the primary care physician in this case. His initial, you know, he claims I had a computer problem with regard to my records, and so the history of the accident wasn't contained in the records here. Well, if you look at Dr. Bracevich's initial note here, the guarantee, or his claim, his insurance is Blue Cross Blue Shield. But this is one of the most comprehensive reports I've ever seen. And that's all the history of a workplace accident. He's got his current medications, his social history, the review of symptoms, what's his sleep like, does he exercise, the reasons for the appointment, depression screening, constitutional examination, assessments, treatment. This is one of the more comprehensive reports. The first five medical records does not mention the workplace accident in this. If this was a workplace accident, I don't think the claimant would be putting it through his blue health insurance. Another issue of credibility is that the claimant, you know, he says he fell, but his hand out fell a jerk in his elbow, and his pain was an 8 out of 10. Yet he waited a week to go see a doctor. He had that significant of an injury. At that type of pain level, it seems strange, lacking the will to go see a doctor for that long. Dr. Bracevich and counsel claimant Dr. Hennessey agreed with the causation. That's absolutely not correct. Dr. Hennessey based his opinions on the fact that there was no initial report of the accident. Counties asked a lot of hypotheticals by the claimant's attorney, and he asked, well, if it was in the initial medical records, would your opinion change? No, he was fully Dr. Hennessey's. He did a record review for me. He said, yeah, that would change my opinion, but it wasn't in the initial medical records. The claimant's attorney put in photographs of the machinery that Pipefitter uses. Could this kind of machinery cause a degenerative condition? He said, yeah, the type of machinery working on that could cause a degenerative condition, but this isn't a run-of-the-mill trauma case. This is an acute injury where the claimant testified he slipped and fell. His ill-treater, his primary care doctor, said this was an acute accident. I guess I would point out that the treating surgeon, Dr. Perez-Sanders, wasn't opposed in this case to give his opinions. It is in the records that the claimant testified, in the medical records, that the claimant said, well, this is the first time I can lift my arm over my head in three years. Yet the claimant testified as completely asymptomatic before this accident. That's another issue that goes with credibility care. Dr. Hennessey, the primary care doctor, about nine months before the accident, he was complaining of shoulder pain. The doctor did a test for compression. The doctor testified that he could have had compression before that, that the A&C joint. With regard to Dr. Hennessey, he reviewed the operative report. He said these findings are not consistent with an acute injury. And I'll point out in the petitioner's statement in the back, he says that the primary care doctor opposed it. He didn't get a labral tear. If you look at the operative report, there's no labral tear. There was some fraying around it that was derided. There was no rotator cuff tear. There was nothing acute in the shoulder. There was no rotator cuff tear. There was no labral tear. He basically, they went in and they removed a spur from the A&C joint, and there was an enlarged bursa which they removed. There was nothing consistent with an acute injury here. Again, it's not Dr. Hennessey's opinion that this was caused by the workplace accident, despite counsel's assertions otherwise. And I will say the arbitrator felt like the primary care doctor, Dr. Gracevich, did a good job, I guess, in indicating that the claimant told him about this. Well, again, it's not in his first five medical records. And across examination, he said, Well, I specifically can't remember if he told me about the accident. I'm assuming so because I knew he was a pipefitter and he did overhead work. He couldn't say to the surgeon whether or not the claimant told him about the accident at the time of the injury. The primary care doctor was asked repeatedly with regard to subsequent histories, whether or not he agreed with that, but there were no histories contained within his initial medical records. All right, so your position is that the commission's considering of this incident after the witness has testified is relevant to his overall credibility, and in any event, in a manifest way, he should lose because an opposite conclusion is not clearly apparent. Another reason would be just to win you. Is that your argument? Yes, Your Honor. I guess an autonomous error for them to have considered the testimony, the exchange between the condition and the witnesses after the hearing. Okay. Although I noted looking at your brief, I just looked at it. You did not specifically argue with harmless error or sighted cases in your brief. No, I didn't. Okay. All right. Okay. Counsel, thank you. Counsel, you may reply. I was going to point that out. Is there any mention of harmless error? I know earlier they say that this was not appropriate. He's already made it relevant to credibility. The fact that when both people said this was appropriate, this was how the court should have allowed this in and it was appropriate for them to review it. It wasn't, and we can go down this road. I mean, if we're going to say that the overall credibility of the parties, you can look at prior bad acts or their reputation, that sort of thing. I can line up clients for this respondent, for other respondents who were inappropriately denied benefits, who have been cited by the Department of Labor for withholding wages. You can do all kinds of things where prior bad acts of a respondent, if we're going to say that's relevant, we can go through all that, but it's not, and that's why we don't do this thing. The issue with regard to harmless error, like I said, hasn't been brought up. It certainly can't be harmless error because that was what the commission said they based their ruling on, his overall credibility. It's clearly relevant regarding determination of his overall credibility, and what they've done in this is they've made up their own facts that aren't supported by the Department to then hit that background down and say, well, look, this doesn't make any sense. This is inconsistent. Well, it is inconsistent, but they didn't say it. It is inconsistent about the doctor's records, but it's not in there. Now, what they didn't find was that the doctor was not credible. The doctor testified, yeah, I should have put it in the records. I didn't because I was new to this system. And they said, well, he wasn't 100% accurate. And so now the commission has required 100% certainty. We no longer have more problems true than not true. We no longer have, to the reasonable degree of medical certainty, now you have to be 100% certain in order to get this evidence, and that's not appropriate. And so consistently throughout the committee, the commission creates their own standard, takes their own facts that aren't in the record to then have the petitioner not meet their made-up standard. I think what's also significant is the questions about Dr. Hennessey. Dr. Hennessey wasn't given Dr. Dragas' deposition. And so Dr. Hennessey said, yeah, if you told the doctor that it was related, sure, I would have said it was related. But I wasn't given the deposition. I didn't know that the doctor clarified that issue. What I ask you to do is remand this case back out to the commission for determination of, and it's my expectation that they will confirm the change of decision. Thank you. Thank you, counsel, both, for your arguments in this matter. We take it under advisement that this position shall issue.